491 So.2d 1238 (1986)
WESTINGHOUSE ELECTRIC CORPORATION, Appellant,
v.
JACKSONVILLE TRANSPORTATION AUTHORITY, AND MATRA TRANSPORT, S.A., Appellees.
No. BJ-460.
District Court of Appeal of Florida, First District.
July 25, 1986.
Stephen H. Durant and Steven R. Sparks, of Martin, Ade, Birchfield & Johnson, P.A., Jacksonville, for appellant.
*1239 Gerald A. Schneider, General Counsel, Linda Logan Bryan and Cindy A. Laquidara-Kenney, City of Jacksonville, for appellee Jacksonville Transp. Authority.
William H. Adams, III, of Mahoney, Adams, Milam, Surface & Grimsley, P.A., Jacksonville, and Robert P. Smith, Jr., of Hopping, Boyd, Green & Sams, Tallahassee, for appellee Matra Transport, S.A.
NIMMONS, Judge.
Westinghouse Electric Corporation appeals from an order of the Jacksonville Transportation Authority (JTA) determining that Westinghouse did not have standing to protest alleged improprieties in the bidding process on the proposed Automated Skyway Express (ASE) people mover system in Jacksonville and finding that Westinghouse had not been excluded from that bidding process. We affirm.
JTA initiated a two-step bidding process for its proposed ASE people mover system. In the first step, JTA issued a "Request for Technical Proposals" (RFTP). Suppliers could prequalify for the second step by submitting a non-priced proposal that met the requirements of the RFTP. On May 22, 1985, three suppliers were invited to proceed to step two of the bidding process: Westinghouse, Matra Transport, S.A., and a third company not here a party. Step two entailed submission of a proposal meeting the specifications in JTA's "Invitation for Priced Proposals" (IFPP). Some of the technical requirements of the IFPP were phrased somewhat differently than they had been in the RFTP. The RFTP included the following specification:
9.2.1.2 Guideway Geometry
The guideway geometry will be limited as follows:
(a) Minimum Mainline Lateral Curve Radius 100 ft.
* * * * * *
(d) Spiral Transitions Based on operational speeds, spiral transitions shall limit lateral jerk to 0.06 g/sec. and rate of rotation of superelevation to 0.022 ft./ft./sec.
(e) Minimum Spiral Length 40 ft.
(Emphasis added). Another portion of the RFTP included the following:
All elements of the switching system and its operation shall be in accordance with the fail-safe and/or checked-redundancy principles as defined in Section 9.5.1.2.
The same requirements were repeated in the IFPP, but the above quoted paragraph included the following emphasized language:
All elements of the switching system and its operation shall be in accordance with the fail-safe and/or checked-redundancy principles as defined in Section 9.5.1.2 and with the spiral transition requirements of Section 9.2.1.2. ...
(Emphasis added.) Westinghouse wrote a letter to JTA on June 19, 1985 listing 42 "questions, comments, exceptions and clarifications." Item 42 was the following:
42. Section 9.10, Page 338  Westinghouse takes exception to the requirement of the switching elements meeting "the spiral transition requirements of Section 9.2.1.2." In order to meet these requirements, the Westinghouse switch would require a pair of moveable I-beams of at least 44 feet in length, which would deflect vertically 0.5 inch due to their own weight. This would not be an acceptable design.
On June 24, 1985, Westinghouse added a number of other items to the above-referred questions, comments, exceptions and clarifications, bringing the total to 67. A free-form conference was held between JTA and Westinghouse. JTA clarified its spiral transition requirement in an addendum, and extended the bid deadline ten days.
On July 19, 1985, at 2:00 P.M., the City's purchasing officer announced that time to submit bids had passed. He had before him a package containing the MATRA priced proposal, and a heavy, securely bound box marked "Priced Proposal" from Westinghouse. The officer later testified that, from all outward appearances, the package had obviously been prepared to simulate a bona fide priced proposal. The *1240 third invited company did not submit a bid. The purchasing officer proceeded to open the sealed packages. He unsealed the Westinghouse box and began searching through the contents which included pamphlets and other literature. However, he could not find a priced proposal. After more searching, a Westinghouse representative informed him that the box did not contain one. Instead, it contained a letter explaining that Westinghouse could not submit a responsive proposal, but would sell the JTA a people mover system within the federal guidelines for the project[1] and within the JTA's budget. This document did not contain a bond of any type. In contrast, MATRA'S package contained a bonded, priced proposal.
Westinghouse filed a notice of protest on September 16, 1985,[2] and a more detailed one on September 24, 1985. It protested conduct of JTA and MATRA occurring after the opening of the bid[3] and protested the bidding process itself as being exclusionary, specifically referring to the spiral transition requirements. MATRA filed a motion to dismiss the notice of protest.
JTA determined that MATRA and Westinghouse were entitled to an informal hearing on the motion to dismiss pursuant to Section 120.57(2), Florida Statutes and not a formal hearing pursuant to Section 120.57(1), Florida Statutes.[4] At the November 5, 1985 informal hearing on the motion to dismiss, the JTA board heard a full day's testimony. After discussion, it adopted two resolutions in a lengthy order: the first being that Westinghouse did not have standing as a non-bidder to protest MATRA'S priced proposal; and the second being that Westinghouse had not been excluded from participating in the bidding process by virtue of the spiral transition requirements. It is this order from which Westinghouse appeals.[5]
Westinghouse raises three issues on this appeal. First, Westinghouse argues that JTA's determination that Westinghouse has no standing to protest the conduct of JTA and MATRA is erroneous. Second, Westinghouse argues that it was excluded from the bidding process by JTA's technical requirements. Third, Westinghouse argues that the motion to dismiss should have been disposed of via a formal hearing instead of an informal hearing.

I. STANDING OF A NON-BIDDER
JTA correctly determined that Westinghouse did not have standing to protest the actions of MATRA and JTA which occurred after the bids were opened. A party has standing to protest the lowest bid if that party has a substantial interest to be determined by the agency. Preston Carroll Company, Inc. v. Florida Keys Aqueduct Authority, 400 So.2d 524 (Fla. 3rd DCA 1981). See also Section 120.53(5)(b), *1241 Florida Statutes (1983)[6]. In Preston Carroll, supra, an unsuccessful bidder did not establish a substantial interest entitling it to challenge the highest bidder where the testimony showed it was not the second lowest bidder and would not receive the award even if the challenge were successful. In Department of Commerce, Division of Labor v. Matthews Corporation, 358 So.2d 256 (Fla. 1st DCA 1978), a disappointed bidder had standing to challenge the validity of agency guidelines without a discussion of that bidder's proximity to the award because the challenged rule affected the bidder's ability to compete in the future on public works projects. The present case does not present such a circumstance. Neither is appellant's reliance upon Capeletti Brothers v. Department of General Services, 432 So.2d 1359, 1360 n. 1 (Fla. 1st DCA 1983) persuasive. Unlike the instant case, no standing issue was raised in Capeletti Id. at 1360, fn. 1.
No exceptional circumstances exist in the present case to allow Westinghouse, a non-bidder, to have standing to challenge the successful bidder. In fact, this case is a perfect example of the importance of limiting standing in the bidding process. Through a ruse, namely a box weighted with papers marked "Priced Proposal" on the outside, Westinghouse effectively enticed MATRA into submitting its best, good faith, bonded bid. Now, after learning the terms of MATRA's proposal, Westinghouse attempts to challenge the process to force the JTA to start again. This "sandbagging," if permitted, would erode the integrity of the public bidding process. The JTA correctly did not allow Westinghouse to complain about actions that occurred after it voluntarily determined not to submit any bonded priced proposal. MATRA became obligated to perform its proposal upon acceptance by the awarding authority. Westinghouse chose not to place itself under any obligation. Absent extraordinary circumstances not present here, a non-bidder does not have standing to challenge the successful bid.

II. EXCLUSIONARY REQUIREMENTS
Westinghouse contends that it could not submit a responsive bid because the technical requirements of the IFPP were exclusionary. The good faith of this argument is significantly undercut by the fact that Westinghouse was not heard to complain of the exclusionary practices until more than six weeks after the bids were opened and by the fact that it submitted the phony bid. Nevertheless, Westinghouse is entitled to have this argument addressed since it was a basis for the JTA's order below. We agree with JTA that Westinghouse was not excluded from the bidding process.
Shortly before the bid submission deadline, Westinghouse complained that the spiral transition requirement was inappropriate for their proposal. A free-form meeting was held after which the spiral transition requirement was reaffirmed, but clarified. The bidders were given ten extra days to submit bids. Westinghouse at no time complained that the requirements were exclusionary and made no effort to delay the opening of bids. They complained afterwards and were afforded a fair hearing on the merits of the claim. The basis for the claim was that the spiral transition requirements were in some way unfair. The record clearly supports JTA's conclusion that the spiral transition requirements were included from the beginning of the bidding process. The additional language in the IFPP, as quoted earlier in this opinion, merely clarified already existing requirements. All testimony indicates that spiral transitions limit lateral jerk of the vehicles making the ride more comfortable for passengers when negotiating curves. JTA was certainly entitled to impose *1242 this requirement as necessary for public health and safety.
The bidding process used by JTA is not merely a submission of a quote for constructing a system to particular specifications, but is an invitation for bidders to propose a solution to the agency's needs within limitations set by the agency. See System Development Corp. v. Department of Health and Rehabilitative Services, 423 So.2d 433 (Fla. 1st DCA 1982) (describing the flexibility of the "priced proposal" process). As such, it encourages interaction and development between the agency and the bidders. This in fact occurred between JTA, MATRA and Westinghouse. As earlier noted, Westinghouse submitted numerous questions and comments about the process and what was expected of it, and they were addressed by JTA either after review by the agency or after a free-form hearing at which Westinghouse was a full participant. At no time during this process did Westinghouse complain that the requirements were exclusionary. It did object to them on various other grounds, such as the expense and perceived non-necessity of spiral transitions. JTA determined that the spiral transitions were necessary, and informed Westinghouse of that well before the date for submitting proposals.
Given that the requirements were available to Westinghouse from the beginning of the process, that the requirements are themselves reasonable and well within the discretion of JTA and that Westinghouse did not raise the issue until after the submission and unsealing of bids, after which Westinghouse was afforded a full and fair hearing, we affirm JTA's finding that Westinghouse was not excluded from the bidding process.

III. PROPRIETY OF AN INFORMAL HEARING
Westinghouse was given an opportunity to demonstrate any factual issues that were disputed with regard to the alleged exclusionary requirements. It was unable to do so. In fact, in oral argument before this court, counsel for Westinghouse was unable to point to any material fact in dispute which required a formal hearing.
If there are material issues of fact to be resolved, a formal hearing is required. Section 120.57(1), Florida statutes (1983). If there are none, than an informal hearing is appropriate. Section 120.57(2), Florida Statutes (1983). In the present case, an informal hearing was appropriate. See E.M. Watkins & Co., Inc. v. Board of Regents, 414 So.2d 583, 589 (Fla. 1st DCA 1982). JTA properly afforded Westinghouse an informal hearing.
AFFIRMED.
WENTWORTH, J., and DAVEY, KEVIN P., (Associate Judge), concur.
NOTES
[1] JTA was depending on federal funds for a large portion of the project's funding and for that reason had to keep the project within specific guidelines.
[2] JTA sent Westinghouse a copy of a letter from JTA to MATRA, reflecting an agreement by MATRA to reduce its overall bid price. This notice was received by Westinghouse on September 16, 1985. Westinghouse filed its protest the same day. As the issue was not raised in the proceeding below or on appeal, we make no ruling on whether this was a timely filed protest pursuant to Section 120.53(5), Florida Statutes (1983).
[3] Specifically, Westinghouse alleged that MATRA's bid was nonresponsive to the IFPP, and that MATRA was allowed to modify its bid after it was unsealed.
[4] JTA held a hearing at which it invited Westinghouse to point to any factual dispute that needed to be resolved. They determined that Westinghouse had not presented any such dispute and therefore ruled that an informal hearing would be proper to resolve the motion to dismiss.
[5] Westinghouse filed another appeal to this court in Case No. BM-300. That case raises substantially the same issues based on the same facts as does this appeal. It is controlled entirely by the disposition of this case. Therefore, Case No. BM-300 is dismissed pursuant to Appellee/MATRA's motion to dismiss. Since that appeal is dismissed, Westinghouse's motion to consolidate is denied. In addition, we grant MATRA's motion to strike matters from the reply brief in Case No. BJ-460 which were not in the record below.
[6] JTA Rule 2-4 mirrors this statute and provides:

(1) Any person adversely affected by a decision during bid solicitation or the intended decision to award a contract or to reject all bids shall file a Notice of Protest, in writing... .
We interpret the rule as consistent with Section 120.53(5)(b) and the case law interpreting it.