ERVIN, Judge.
Appellants, Advocacy Center for Persons With Disabilities, Inc., D.H., and D.A., appeal an order of the Department of Children and Family Services dismissing their formal written protest of the Department’s request for proposals (RFP) on the basis of lack of standing. Appellants contend that even though they are not potential bidders on the RFP, they are adversely affected by the specifications as written and thus have standing. We affirm, because none of the appellants has any actual interest in the procurement process.
In 1997, the legislature enacted section 394.47865, Florida Statutes (1997), directing the Department to issue an RFP for the purpose of privatizing South Florida State Hospital (SFSH), a psychiatric hospital. The statute authorized the Department to enter into agreements with providers to finance, design and construct a treatment facility of up to 350 beds and to conduct all aspects of the daily operation of the facility. On February 3, 1998, the Department issued RFP LI001GC, which appellants thereafter protested pursuant to section 120.57(3)(b), Flori-da Statutes (1997).
Appellants alleged that both D.A. and D.H. were involuntarily confined at SFSH when they filed the written protest.[1] The Advocacy Center is a private, nonprofit Florida corporation designated by the governor in executive orders 87-151 and 94-333, pursuant to Chapter 87-130, Laws of Florida, as the recipient of federal funds for programs providing for the protection of and advocacy for persons with disabilities. Pursuant to federal statutes, it is charged with pursuing administrative, legal and other appropriate remedies to ensure the enforcement of the constitution and federal and state statutes on behalf of individuals with mental illness and developmental disabilities.
In response to an order to show cause why the protest should not be dismissed for lack of standing, appellants alleged numerous economic and noneconomic injuries they would purportedly suffer under a contract that complied with the RFP’s specifications. They asserted, for example, that the specifications remove mechanisms which currently allow persons confined at SFSH to manage their own funds, fail to require that a private provider assist persons in gaining access to community supports and services, fail to prohibit any decrease in spending for confined persons, fail to allow bidders to propose creative mental health treatment systems, etc.
The Department concluded that the Advocacy Center lacked standing either on its own or on behalf of D.H. and D.A., because “standing inheres only in those persons who are potential parties to the eventual contract which may result from the procurement process. A non-bidder does not have standing to protest.” If a bidder is disqualified as a result of a bid protest, a rebidding of the contract may be required or the agency may award a contract to another bidder. The petitioners, however, could never receive such an award. The Department concluded that the petitioners’ allegations of economic or other injury that SFSH patients will suffer under the specifications were speculative at best. Moreover, the Department determined that the petitioners’ actual and inappropriate purpose was to prevent the procurement from proceeding at all, rather than ensuring a competitive process in which they might participate.
Section 120.57(3)(b) contains the procedures to be used to challenge agency action in the course of the contract bidding process, *755 and permits “[a]ny person who is adversely affected by the agency decision or intended decision” to challenge the specifications of an RFP. To establish that one is adversely affected, it must be shown that the proposed action will cause immediate injury in fact; and that the injury is of the type that the pertinent statute was designed to protect. Fairbanks, Inc. v. Department of Transp., 635 So.2d 58, 59 (Fla. 1st DCA 1994) (on reh’g).
The department was incorrect when it asserted that only bidders or potential bidders can show the injury necessary to establish standing to challenge agency action under section 120.57(3)(b). Standing has been recognized as inhering in nonbidders under “extraordinary circumstances.” Westinghouse Elec. Corp. v. Jacksonville Transp. Auth., 491 So.2d 1238, 1241 (Fla. 1st DCA 1986). For example, in Fairbanks, this court concluded that Fairbanks, a manufacturer of truck-weighing scales, had standing to challenge the department’s award of a contract to D.A.B., a contractor, even though Fairbanks was not a bidder but was simply a supplier of equipment necessary to the bid. D.A.B.’s bid included Fairbanks’ scale system, whereas the department’s specifications required the scale of a competitor, Toledo. This court concluded that Fairbanks established standing by alleging that the department intended to construct numerous weigh stations in Florida in the future using the same specifications, and was impeding the competitive procurement of static scales for weigh stations by permitting only one manufacturer’s model. It appears from our reading of Fairbanks that standing will inhere in a person who at least has some potential stake in the contract to be awarded. Appellants, as neither contractors nor providers of equipment or services, have no stake in the procurement procedure authorized by section 394.47865.
Section 394.47865 was enacted to ensure fair and competitive bidding in the privatization of SFSH, and the specifications of the RFP must comport with that purpose. As this court stated in Capeletti Bros., Inc. v. Department of Transportation, 499 So.2d 855, 857 (Fla. 1st DCA 1986), “[t]he purpose of the bid solicitation protest provision is to allow an agency, in order to save expense to the bidders and to assure fair competition among them, to correct or clarify plans and specifications prior to accepting bids.” A challenge to an RFP must be directed to specifications that are so vague that bidders cannot formulate an accurate bid, or are so unreasonable that they are either impossible to comply with or too expensive to do so and still remain competitive.
Several treatises articulate the purpose of specifications similarly:
Reasonably definite plans and specifications as a basis on which bids may be received must be adopted by a public authority prior to receiving bids. Without such specifications, bids cannot in the nature of things be competitive as several bids may not contemplate supplying identical materials. Uncertainty or unreasonableness of the terms of the specifications will render the award of a contract void.
43 Fla. Jur.2d Public Works & Contracts § 17 (1983) (footnotes omitted).
[I]t is essential ... that plans, specifications, and estimates be prepared in advance and filed or given out to all persons interested in the bidding, sufficiently definite and explicit to enable them to prepare their bids intelligently on a common basis ... for there can be no intelligent bidding for a contract unless all bidders know what the contract is....
Such terms and conditions must ... be sufficiently certain and definite to secure a fair basis for competitive bidding, and should contain nothing that would otherwise prevent or restrict full and free competition.
64 Am.Jur.2d Public Works & Contracts § 50 (1972) (footnotes omitted).
In order to give all bidders an opportunity to bid on the same thing, it is essential that the proper public authorities shall, prior to the solicitation and • reception of bids, adopt plans and specifications definitely fixing the extent and character of the work to be done or materials to be furnished, so as to set up a proper compet *756 itive standard and afford a basis for competitive bidding.
72 C.J.S. Supp. Public Contracts § 10 (1975) (footnote omitted).
It is apparent that only potential bidders, and perhaps suppliers of hospital equipment or services to a bidder, have standing to contend that the RFP is too vague or unreasonable to permit a truly competitive bid. In contrast, appellants’ challenge is addressed, point after point, to policy decisions with which they disagree, rather than specifications which need clarification because of ambiguity or need adjustment because of expense. Accordingly, the injuries that appellants allege are not the type that section 394.47865 was designed to protect.
In conclusion, the legislature decided that SFSH must be privatized and implemented section 394.47865 to authorize construction of a new facility. Section 394.47865(2)(b) expressly directs the department and whichever contractor it selects to operate the hospital to ensure that the facility provides effective treatment to the mentally ill, and assistance that will enable patients to return quickly to their communities. Section 120.57(3)(b) allows adversely affected persons to challenge the specifications of the RFP. Only potential contractors or providers under the contract to be awarded pursuant to the RFP have standing to litigate whether the RFP’s specifications are so vague or unreasonable that the contractor will be unable to satisfy the goals of section 394.47865. Neither the Advocacy Center nor the individual appellants are engaged in any endeavor related to the actual operation of treatment facilities, and thus they cannot further the department’s efforts to ensure a just procurement procedure.
AFFIRMED.
BOOTH and VAN NORTWICK, JJ., concur.

. D.H. has since been discharged, but is at some risk of being again confined based on multiple institutionalizations in the past.