HAWKES, J.
These consolidated appeals result from Liberty Behavioral Health Corporation’s (Liberty’s) challenge to specifications contained in the Request for Proposals (RFP) issued by the Department of Children and Families (DCF), to construct a civil commitment facility for sexually violent predators.
In the first appeal, Liberty sought to uphold the trial court’s grant of a temporary injunction, which prevented DCF from enforcing the statutory requirement that Liberty post a 1% protest bond prior to bringing a challenge to the RFP specifications. In that appeal, Liberty argues the amendment to section 287.042(2)(c), Florida Statutes (2002),[1] which removed the option of posting a $5,000.00 bond pri- or to challenging a bid specification, but continued to require posting a bond constituting 1% of the estimated contract price, is unconstitutional.
In the second appeal, Liberty challenged DCF’s decision to conduct an informal rather than a formal hearing, to resolve the dispute arising from Liberty contesting two of DCF’s RFP specifications as arbitrary and capricious.
Finding no merit in either of Liberty’s arguments, we reverse the trial court’s order in the first appeal, and affirm DCF’s order in the second.

*37
Factual and Procedural Background

On June 21, 2005, DCF issued its RFP for the construction and operation of the sexually violent predator facility. There were two RFP specifications challenged by Liberty. The first required that potential vendors realize a substantial portion of their annual revenues from managing “ACA [2]-accredited private correctional facilities,” (i.e., have experience operating a correctional facility). The second required the sexually violent predator facility be designed to meet the ACA prison standards for security.
In their protest, Liberty alleged these two specifications were arbitrary and capricious, and would disqualify it from bidding, even though it has operated the existing sexually violent predator facility under contract with DCF for approximately six years. However, to have a valid protest, Liberty was required to post a $5,062,550.00 protest bond. As required by section 287.042(2)(c), Florida Statutes, this amount constituted 1% of the estimated five hundred million dollar value of the contract that would result from the RFP.
Instead of posting the statutorily required bond, Liberty filed a declaratory judgment action, alleging the 1% bond requirement was unconstitutional. Liberty also filed a motion seeking a temporary injunction to prohibit DCF from enforcing the statutory protest bond requirement with regard to Liberty’s protest. The injunction would allow Liberty to file their protest and, consequently, stop all progress on the RFP.
Following a hearing, the trial court entered an order granting Liberty’s motion for temporary injunction. The order: (1) conclusorily found Liberty had shown a likelihood of success on the merits, irreparable harm and no adequate remedy at law; (2) required Liberty to post a $5,000.00 bond, and (3) enjoined DCF from requiring a 1% protest bond before accepting Liberty’s protest. DCF appealed, automatically staying the trial court’s temporary injunction. Liberty filed a motion to vacate the stay, which the circuit court granted.
During the pendency of DCF’s appeal of the injunction, Liberty’s challenge to the RFP specifications continued before DCF. Liberty requested a formal hearing before the Division of Administrative Hearings (DOAH) pursuant to section 120.57(1), Florida Statutes (2005), instead of an informal hearing pursuant to section 120.57(2), Florida Statutes (2005). As grounds for entitlement to a formal hearing, Liberty asserted there were disputed issues of material fact. These disputed facts included, but were not limited to, whether the terms, conditions and specifications: (a) relating to financing the construction and operation of the facility; (b) requiring the facility be constructed to prison standards; and (c) limiting vendors to entities that realize a substantial portion of their revenues from management of a correctional facility, were arbitrary and capricious, clearly erroneous, and contrary to competition and Chapter 394, Part V, Florida Statutes.
After hearing arguments of counsel, DCF determined a formal hearing was not required because, contrary to Liberty’s assertions, there were no disputed issues of material fact. Consequently, DCF conducted an informal hearing.
At the informal hearing, it was uncontested that, during the course of Liberty’s *38 performance of the existing contract, security problems had led to DCF and Liberty requesting and receiving assistance from the Department of Corrections (DOC) to reestablish command and control of Liberty’s current facility. DOC, together with local law enforcement and a private security vendor, conducted an intervention at Liberty’s facility. This intervention involved 450 law enforcement officers, during which Liberty’s population of approximately 500 sexually violent predators was again secured. As a result of this incident, DOC and DCF entered into a contract for continued monitoring and oversight of Liberty’s facility. Liberty presented evidence to show the security problems were less serious than perceived by DCF, but acknowledged the existence of security problems that implicated life safety issues at the facility prior to DOC’s intervention.
The hearing officer noted that whether Liberty adequately performed its obligation under the existing contract was not the issue in the specification protest. Thus, Liberty’s factual claims regarding the level of security, the extent of command and control problems, and the extent to which Liberty did or did not cure security deficiencies, need not be resolved. The hearing officer concluded the sole is7 sue for resolution was whether DCF’s decision to include the challenged RFP specifications was arbitrary and capricious or, stated differently, whether DCF’s decision to include the specifications was supported by logic so that it was not irrational. The hearing officer found the decision to include the specifications was reasonable, and within the agency’s discretion. The hearing officer’s order resulted in Liberty filing the second appeal.

Liberty Is Not Entitled to a Temporary ¡Preliminary Injunction

“[T]he issuance of a preliminary injunction is an extraordinary remedy which should be granted sparingly, [and] which must be based upon a showing of the following criteria: (1) The likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) substantial likelihood of success on the merits; and (4) consideration of public interest.” Shands at Lake Shore, Inc. v. Ferrero, 898 So.2d 1037, 1038-1039 (Fla. 1st DCA 2005); City of Jacksonville v. Naegele Outdoor Adver. Co., 634 So.2d 750 (Fla. 1st DCA 1994).
“Every injunction shall specify the reasons for entry....” Fla. R. Civ. P. 1.610(c). “Clear, definite, and unequivocally sufficient factual findings must support each of the four conclusions necessary to justify entry of a preliminary injunction.” Milin v. N.W. Fla. Land, L.C., 870 So.2d 135, 136 (Fla. 1st DCA 2003). “The findings must do more than parrot each tine of the four-prong test.” Santos v. Tampa Med. Supply, 857 So.2d 315, 316 (Fla. 2d DCA 2003); see also Yardley v. Albu, 826 So.2d 467 (Fla. 5th DCA 2002).
Here, the temporary injunction failed to provide any factual findings to support the essential elements of the four-prong test. Instead, the order simply parrots three of the injunction criteria, and fails to even mention the fourth (consideration of public interest). Consequently, it is facially deficient, and therefore REVERSED.

Liberty’s Required Showing to Successfully Challenge the RFP Specifications

For Liberty to prevail in its challenge to the RFP specifications, it must show DCF’s decision to include the contested specifications was arbitrary or capricious. See § 120.57(l)(d), Fla. Stat. (2005); § 120.57(3)®, Fla. Stat. (2005). An action is “arbitrary if it is not supported by logic *39 or the necessary facts,” and “capricious if it is adopted without thought or reason or is irrational.” § 120.57(l)(e)2.d., Fla. Stat. The determination as to whether DCF’s decision was arbitrary or capricious is resolved by conducting either a formal or an informal hearing. See § 120.57(1) — (2), Fla. Stat. (2005) If disputed issues of material fact exist, a formal hearing must be held. See § 120.57(3)(d)3, Fla. Stat. (2005); see also GTECH Corp. v. Dep’t of Lottery, 737 So.2d 615 (Fla. 1st DCA 1999).

No Disputed Issues of Material Fact

Liberty’s assertions that disputed issues of material fact exist, do not create disputed issues of material fact. See generally, e.g., Geer v. Jacobsen, 880 So.2d 717 (Fla. 2d DCA 2004). If DCF correctly concludes no disputed issues of material fact exist, it may proceed informally. See Nicolitz v. Bd. of Opticianry, 609 So.2d 92 (Fla. 1st DCA 1992); see also Schafer v. Dep’t of Bus. & Prof. Reg., 844 So.2d 757 (Fla. 1st DCA 2003).
Here, Liberty conclusorily asserts the RFP specifications, which require the sexually violent predator facility be built to prison construction standards, and that bidders receive a substantial portion of their annual revenues from the operation of correctional facilities, are arbitrary and capricious. However, Liberty does not allege any disputed material facts upon which its allegations are based, nor does it allege the specifications are so vague it cannot formulate a bid, or so unreasonable as to be impossible with which to comply. See Advocacy Ctr. for Persons With Disabilities, Inc. v. Dep’t of Children & Family Servs., 721 So.2d 753 (Fla. 1st DCA 1998) (noting a challenge to an RFP must be directed to specifications so vague that bidders cannot formulate an accurate bid, or so unreasonable that they are either impossible to comply with or too expensive to do so and be competitive).
Liberty’s failure to cite with specificity any material facts in dispute, means DCF did not abuse its discretion by refusing to refer the matter to DOAH, and by proceeding informally pursuant to section 120.57(2), Florida Statutes.

Decision to Include the Contested RFP Specifications Was Not Arbitrary or Capricious

 The contested RFP specifications arise from DCF’s statutory obligation to construct a new commitment facility for individuals committed, against their will, under the Jimmy Ryce Act. To be committed under the Jimmy Ryce Act, an individual must be lawfully incarcerated at the time commitment is sought, and meet the two-prong definition of a sexually violent predator. See Westerheide v. State, 831 So.2d 93, 106 (Fla.2002). “Pursuant to this statutory definition, a sexually violent predator is any person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.” Id. (emphasis in original) (citing § 394.912(10), Fla. Stat. (2001)).
“The statute defines ‘mental abnormality’ as ‘a mental condition affecting a person’s emotional or volitional capacity which predisposes the person to commit sexually violent offenses.’ ” Id. (quoting § 394.912(5)). “ ‘Likely to engage in acts of sexual violence’ is defined as ‘the person’s propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others.’ ” Id. (quoting § 394.912(4), Fla. Stat.). “ ‘[L]ikely’ is a widely used term that is commonly understood by men and women of common intelligence to mean highly probable or probable and having a *40 better chance of existing or occurring than not.” Id.
The dangerous nature of the individuals to be committed, and the fact that they are required by statute to be committed to a secure facility, supports DCF’s decision to require the sexually violent predator treatment facility be constructed to the security specifications of an ACA approved prison, and that bidders have correctional experience.
Further support for the contested RFP specifications can be found in DCF’s “real world” experience of Liberty’s management of the existing facility. During this time Liberty lost control of its sexually violent predator population. The loss of control required DOC intervention to regain command and control of the facility and resulted in continued DOC monitoring.
DCF’s decision to include the challenged RFP specifications was rational and supported by logic and reason. The fact that the challenged specifications may preclude Liberty from bidding does not render DCF’s decision to include them arbitrary and capricious. DCF’s order is AFFIRMED.

Conclusion

For the reasons specified herein, the order granting the temporary injunction in the first appeal is REVERSED, and DCF’s order denying Liberty a formal hearing in the second appeal is AFFIRMED.
POLSTON, J., concurs; BENTON, J., concurs in part and dissents in part, with written opinion.

. Prior to 2002, the protest bond amount for a protest of procurement specifications was 1% of the estimated contract amount or $5,000.00, whichever was less. See § 287.042(2)(c), Fla. Stat. (2001). The 2002 Legislature amended the amount for a protest bond eliminating the $5,000.00 maximum, so the amount of a protest bond is now required to be 1% of the estimated contract price. See § 287.042(2)(c), Fla. Stat. (2002). The 2002 amendment also eliminated any administrative remedy to challenge the amount of the protest bond required by the agency’s estimated contract amount. Specifically, section 287.042(2)(c), Florida Statutes (2005), provides "[t]he estimated contract amount is not subject to protest pursuant to s. 120.57(3).” Id.

. The American Correctional Association, or ACA, is a private accreditation organization that evaluates correctional facilities based on uniform standards relating to issues such as security, training, administration, protection of inmate rights, and medical treatment.