[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13246
Non-Argument Calendar

_____

D. C. Docket No. 06-00345-CV-J-20-TEM

DONALD SMITH,

Plaintiff-Appellant,

versus

HARRY SHORSTEIN,
ERNEST BELL,
LAURA BAER,
JOHN DOE,
One unknown Duval County Assistant State Attorney,
JAMES MCDONOUGH, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 13, 2007)**

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Donald Smith, a Florida state prisoner proceeding pro se, appeals the district court's dismissal, pursuant to 28 U.S.C. § 1915(e), of his civil rights action against various state officials. For the reasons that follow, we affirm in part, and vacate and remand in part.

## I. BACKGROUND

Smith was originally sentenced in Florida state court to fifteen-years imprisonment for attempted kidnaping and selling obscene material to a minor. That sentence was later reduced to six years. Smith was subsequently released from state incarceration and placed on conditional-release supervision to run until February 21, 1999, the date his six-year sentence was to expire. While on release, however, Smith was arrested for an unrelated misdemeanor offense and confined in a county jail. A warrant was issued for Smith's violation of his conditional release on December 22, 1998, and, after he waived his right to a conditional-release-revocation hearing, Smith was returned to the custody of the Florida Department of Corrections ("FDOC") on January 19, 1999. Smith was transferred to the Putnam Correctional Institution ("PCI") on January 28, 1999. On February 21, 1999, Smith's original prison sentence expired, but Smith remained incarcerated at PCI.

2

On March 3, 1999, the Florida Parole Commission revoked Smith's conditional release, and forwarded Smith's file to FDOC administrators, including Chris Gordon. On March 9, 1999, Gordon notified the Florida Department of Children and Family Services ("DCFS") that Smith potentially qualified for commitment under the Involuntary Civil Commitment of Sexually Violent Predators Act ("Jimmy Ryce Act"), Fla. Stat. Ann. § 394.910. "To be committed under the Jimmy Ryce Act, an individual must be lawfully incarcerated at the time commitment is sought, and meet the two-prong definition of a sexually violent predator." Hadi v. Liberty Behavioral Health Corp., 927 So. 2d 34, 39 (Fla. Dist. Ct. App. 2006). On March 11, 1999, DCFS psychologists interviewed Smith to ascertain whether he qualified for "Jimmy Ryce" commitment. On March 15, 1999, the State Attorney's Office obtained a warrant for Smith's continued detention under the Jimmy Ryce Act, and Smith was transported to Martin Correctional Institution ("MCI") where he was placed in a Jimmy Ryce treatment center. He remained confined under the Act until April 15, 2002.

On April 13, 2006, Smith filed a pro se complaint under 42 U.S.C. §§ 1983, 1985, and 1986[1] against, in their individual capacities, Florida State Attorney Harry Shorstein, state prosecutors Ernest Bell and Laura Baer (collectively, the

---

[1] Smith also raised claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680, but because none of the defendants are *federal* officials, the FTCA is inapposite.

3

"Prosecutors"), James Crosby, John McGlaughlin, Mike Workman, and Chris Gordon of the FDOC, psychologists Ted Shaw and Jeffery Benoit of the DCFS, and Monica David of the Florida Parole Commission, and various unknown corrections officers at PCI and MCI. Smith claimed that the defendants conspired to, and did, kidnap and falsely imprison him without legal authority or jurisdiction in violation of his due process and equal protection rights under the United States Constitution. He alleged that he was illegally confined beyond the expiration of his prison sentence in February 21, 1999 so that the defendants could civilly commit him under the Jimmy Ryce Act—an Act requiring the state to have lawful custody of the person for whom commitment is being sought. Smith further claimed that he was unlawfully confined from February 21, 1999 to April 15, 2002 without access to a law library or an attorney. Smith also alleged violations of state tort law by the unknown corrections officers at PCI and MCI.

After performing the required screening under the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2), the district court sua sponte dismissed the complaint, without prejudice, on the grounds that: (1) the claims against the Prosecutors were barred by prosecutorial immunity, (2) the claims against the MCI employees should have been filed in the Southern District of Florida, (3) the state-law tort claims (including those against the PCI corrections officers) were not cognizable in

4

a federal civil rights action, and (4) the federal claims against the defendants who were *not* entitled to prosecutorial immunity were time-barred. Smith moved for relief from the judgment and to alter or amend the judgment, which the district court summarily denied. Smith filed this appeal.[2]

## II.  DISCUSSION

Under § 1915(e)(2), the district court is required to screen civil complaints filed by prisoners against governmental officers or entities, and shall dismiss the complaint if it is frivolous, fails to state a claim, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). An action is considered "frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001). An action is also considered frivolous when it appears that the plaintiff has little or no chance of success—that is, when the complaint on its face makes clearly baseless allegations *or* relies on legal theories that are indisputably meritless. See Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). But "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

---

[2] Smith does not challenge the dismissal of his state tort claims, nor does he challenge the district court's holding that the claims against the officers at MCI were filed in the wrong district. Accordingly, he has abandoned those issues on appeal. Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998).

We review de novo questions concerning the application of a statute of limitations. Harrison v. Digital Health Plan, 183 F.3d 1235, 1238 (11th Cir.1999). We likewise review de novo a district court's grant of absolute immunity. See Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001). And we review a district court's sua sponte dismissal of a claim as frivolous under § 1915(e) for abuse of discretion. Bilal, 251 F.3d at 1349.

## A. Prosecutorial Immunity

"A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government." Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004). Such absolute immunity extends to a prosecutor's acts performed "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999) (citations omitted). So long as such acts are within the "scope and territorial jurisdiction of his office," the prosecutor is immune from an action for damages under § 1983. Elder v. Athens-Clarke County, Ga. Through O'Looney, 54 F.3d 694, 695 (11th Cir. 1995). "Although absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state." Jones, 174 F.3d at 1281-82 (citations omitted).

6

Thus, when determining whether a prosecutor is entitled to absolute immunity, we look to "the nature of the function performed, not the identity of the actor who performed it." Buckley v. Fitzsimmons, 509 U.S. 259, 269, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993).

Here, Smith argues that the Prosecutors are not entitled to immunity because in their efforts to have him civilly committed, they acted in the clear absence of jurisdiction as Smith was not "serving a sentence in the custody of" the FDOC at the time civil commitment was sought. But the "clear absence of jurisdiction" exception to absolute immunity applies to *judges*, not to prosecutors, and it refers to jurisdiction over the *subject matter*. Dykes v. Hosemann, 776 F.2d 942, 946-949 (11th Cir. 1985). By contrast, a prosecutor is entitled to absolute immunity for actions taken in his role as a government advocate and that are within the "scope and *territorial* jurisdiction of his office." Elder, 54 F.3d at 695 (emphasis added). Nothing in the record indicates that the Prosecutors here acted outside of their *territorial* jurisdiction. Thus, the district court properly dismissed Smith's claims against the Prosecutors—Baer, Bell, and Shorstein—as they are entitled to absolute prosecutorial immunity.

### B. Statute of Limitations

The expiration of the statute of limitations warrants dismissing a complaint

as frivolous. Clark v. Ga. Pardons and Paroles Bd., 915 F.2d 636, 641 n. 2 (11th Cir. 1990). But "[t]o dismiss a prisoner's complaint as time-barred prior to service, it must appear beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar." Hughes v. Lott, 350 F.3d 1157, 1163 (11th Cir. 2003).

The length of the limitations period governing actions under 42 U.S.C. §§ 1983 and 1985 is dictated by state law. Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003). Accordingly, Florida's four-year statute of limitations for personal injury actions applies to Smith's §§ 1983 and 1985 claims. Id. Section 1986 actions must be brought "within one year after the cause of action has accrued." 42 U.S.C. § 1986. The question of when the limitations period begins to run (that is, when the cause of action has accrued), is one of federal law. Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996). The general federal rule is that a cause of action "will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." Chappell, 340 F.3d at 1283 (citing Mullinax v. Mc Elhenny, 817 F.2d 711, 716 (11th Cir. 1987)). In analyzing this issue, a court must first identify the alleged injuries, and then determine when the plaintiff could have sued for them. Rozar, 85 F.3d at 562.

An exception to the general rule is the "continuing violation" doctrine. See

Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003). When the violation alleged

involves continuing injury, the cause of action accrues, and the limitation period

begins to run, at the time the unlawful conduct ceases. Donaldson v. O'Connor,

493 F.2d 507, 529 (5th Cir. 1974)[3] (holding that a § 1983 action brought by a

former mental patient for continuous civil confinement without psychiatric

treatment did not accrue until the patient was released), vacated on other grounds

by O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975);

Santiago v. Lykes Bros. S.S. Co., 986 F.2d 423, 426 (11th Cir. 1993) (discussing

Donaldson); Abiff v. Slaton, 806 F. Supp. 993, 996 (N.D. Ga. 1992) (holding that a

former prisoner's § 1983 claim for the state's failure to immediately release him

from state prison or transfer him to county jail after his sentence was vacated on

appeal was a continuing violation that tolled the limitations period), aff'd, 3 F.3d

443 (11th Cir. 1993).

On appeal, Smith argues that because his six-year prison sentence had

expired on February 21, 1999, his continued incarceration after that date was

unlawful so that when state officials commenced proceedings (some time in March

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981.

of 1999) to have him civilly committed, he was *not lawfully* incarcerated as required by Florida law. See <u>Hadi</u>, 927 So. 2d at 39. We conclude that Smith *does* allege a continuing violation that did not end until he was released on April 15, 2002. Thus, with regard to his §§ 1983 and 1985 actions, this claim is not time-barred because Smith filed his complaint on April 13, 2006—less than four years after his cause of action had accrued. But Smith's § 1986 action *is* time-barred because § 1986 actions must be brought "within one year after the cause of action has accrued." 42 U.S.C. § 1986.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the dismissal of Smith's claims against the Prosecutors—Baer, Bell, and Shorstein, and we **AFFIRM** the dismissal of Smith's § 1986 action against the remaining defendants. We **VACATE** the dismissal of Smith's §§ 1983 and 1985 claims against Benoit, David, Crosby, Gordon, McGlaughlin, Shaw, and Workman regarding his approximately three-year civil confinement under the Jimmy Ryce Act, and we **REMAND** for further proceedings.