635 So.2d 58 (1994)
FAIRBANKS, INC., APPELLANT,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellee.
No. 92-2356.
District Court of Appeal of Florida, First District.
January 14, 1994.
F. Alan Cummings and Mary M. Piccard, of Cummings, Lawrence & Vezina, P.A., Tallahassee, for appellant.
Thornton J. Williams, Gen. Counsel, Gregory G. Costas, Asst. Gen. Counsel, Dept. of Transp., Tallahassee, for appellee.

OPINION ON REHEARING
WEBSTER, Judge.
Upon consideration of appellee's motion for rehearing, the original opinion, filed on *59 November 17, 1993, is withdrawn and the following opinion substituted therefor. In all other respects, appellee's motion for rehearing is denied.
Appellant seeks review of a final administrative order entered by appellee (the Department) denying appellant's request, made pursuant to section 120.57, Florida Statutes (1991), for a formal hearing. We agree with appellant that, given the peculiar facts of this case, it was error to deny the request. Accordingly, we reverse.
Appellant's petition to initiate formal proceedings alleged the following. Appellant manufactures and sells truck weighing scales. Toledo Scales (Toledo) is a competitor. The Department awarded a contract to build two weigh stations (on opposite sides of a highway) with static scale systems to D.A.B. Constructors, Inc. (D.A.B.). Each station is to have two static scale systems, which are the mechanisms that actually weigh the vehicles. The contract specification for the static scale systems requires that they include "`[f]ourteen load cells Toledo Scale Model DigiTOL Power Cell or equal.'" Shop drawings submitted by D.A.B. included "a static scale system manufactured by [appellant] which was in accordance with and met the requirements of [the specification]." Nevertheless, the Department rejected the drawings on the ground that appellant's static scale system is "not `equal' to the Toledo product ... because it [does] not include Toledo's DigiTOL Power Cell." "Toledo's DigiTOL Power Cell is exclusively the property of Toledo" and, therefore, cannot be incorporated into appellant's static scale system. However, the lack of this component "does not diminish the efficacy of" appellant's system. Moreover, "[t]he costs of Toledo's scale system for the project will exceed that [sic] of [appellant] by more than $215,000.00." Appellant attempted to convince the Department that its system meets the contract specifications and that the Department's interpretation of the specifications amounted to a prohibited "`sole source' specification," to no avail. The Department "intends to construct many more weigh stations in Florida ... [using] specifications ... identical to that which is contained in D.A.B.'s contract." Because of the manner in which the Department has interpreted the specification, it has violated its duty under Florida law "to ensure the competitive procurement of components such as static scales for weigh stations."
In its order denying the request for a formal hearing, the Department concluded that appellant has no interest of the type that the applicable statute is intended to protect and that, therefore, appellant lacks standing. In essence, the Department concluded that the contract with D.A.B. is a "construction contract"; that, therefore, section 337.11, Florida Statutes (1991), is controlling; and that section 337.11, Florida Statutes (1991), is controlling; and that section 337.11 is intended to protect only the interests of bidders and potential bidders for contracts, extending no protection to suppliers such as appellant.
To establish entitlement to a section 120.57 formal hearing, one must show that its "substantial interests will be affected by proposed agency action." §§ 120.52(12), 120.57, Fla. Stat. (1991). This, in turn, requires a showing that (1) the proposed action will result in injury-in-fact which is of sufficient immediacy to justify a hearing; and (2) the injury is of the type that the statute pursuant to which the agency has acted is designed to protect. Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2d DCA 1981), review denied sub nom. Freeport Sulphur Co. v. Agrico Chemical Co., 415 So.2d 1359 (Fla.), and Sulphur Terminals Co. v. Agrico Chemical Co., 415 So.2d 1361 (Fla. 1982). Accord Town of Palm Beach v. Department of Natural Resources, 577 So.2d 1383 (Fla. 4th DCA 1991); International Jai-Alai Players Ass'n v. Florida Pari-Mutuel Comm'n, 561 So.2d 1224 (Fla. 3d DCA 1990); Boca Raton Mausoleum, Inc. v. Department of Banking & Finance, 511 So.2d 1060 (Fla. 1st DCA 1987). On appeal, the Department does not contend that appellant has failed to satisfy the first prong of the Agrico test. The disagreement is with regard to whether the second prong has been satisfied.
The contract for construction of the weigh stations was advertised for bids pursuant to section 337.11, Florida Statutes (1991). Among other things, that section delineates *60 the scope of the Department's authority to negotiate for and enter into construction contracts. As the Department correctly points out, contracts entered into pursuant to section 337.11 are exempt from the "competitive sealed bidding" requirements generally applicable to state procurement. Section 287.057(3)(f)12., Fla. Stat. (1991). Appellant does not contend otherwise. Rather, appellant argues that it is entitled to a formal hearing notwithstanding the fact that, as a general rule, section 337.11 is intended to protect only bidders and potential bidders for contracts, because it has alleged that the Department's action has permitted the Department to circumvent the legislature's overriding intent to ensure the integrity and the economic efficiency of the public contracting process. In other words, it has alleged that the Department has frustrated competition by specifying, without justification, a static scale system that only one manufacturer can supply; and that such action will result in injury to it, and to the public in general. We agree that appellant's allegations are sufficient to satisfy the second prong of the Agrico test and, therefore, to entitle it to a formal hearing.
We believe that, in focusing only upon section 337.11, and arguing that that section was not intended to protect suppliers making the type of allegations made by appellant, the Department has too narrowly focused its attention. That the legislature intended that, in general, the integrity and the economic efficiency of the public contracting process be ensured is manifest from several statutory provisions. E.g., §§ 255.29 (relating to state construction contracts generally), 287.001 (relating to public procurement generally), Fla. Stat. (1991). In fact, such an intent is found expressed in chapter 337, itself. Section 337.164, Florida Statutes (1991), "[r]ecogniz[es] that the preservation of the integrity of the public contracting process of the [D]epartment is vital to the development of a balanced and efficient transportation system and is a matter of interest to all people of the state"; and that "[t]he procedures of the [D]epartment for bidding and qualification of bidders on [D]epartment contracts exist to secure the public benefits of free and open competition and to secure the quality of public works."
The courts of this state have held on numerous occasions that the legislative intent behind such statutes is protection of the public. E.g., Department of Transportation v. Groves-Watkins Constructors, 530 So.2d 912 (Fla. 1988); Hotel China & Glassware Co. v. Board of Public Instruction, 130 So.2d 78 (Fla. 1st DCA 1961). Given such an intent, such statutes "should be construed to advance their purpose and to avoid their being circumvented." Marriott Corp. v. Metropolitan Dade County, 383 So.2d 662, 665 (Fla. 3d DCA 1980).
In Groves-Watkins, the supreme court noted the salutary purposes behind competitive bidding statutes as follows: "In addition to providing a means by which goods or services required by public authorities may be acquired at the lowest possible cost, ... the system of competitive bidding protects against collusion, favoritism, and fraud in the award of public contracts." 530 So.2d at 913 (citations omitted). Like this case, Groves-Watkins involved interpretation of section 337.11. There, the court concluded that, notwithstanding the broad discretion invested in the Department by the legislature, because of the manifest overriding concern for the integrity of the competitive bidding process, bidders are entitled to some administrative review of the Department's decisions. Therefore, it concluded, further, that bidders are entitled to a formal section 120.57 hearing in certain circumstances. However, "the scope of the inquiry is limited to whether the purpose of competitive bidding has been subverted. In short, the hearing officer's sole responsibility is to ascertain whether the [Department] acted fraudulently, arbitrarily, illegally, or dishonestly." Id. at 914.
Appellant's petition requesting a formal section 120.57 hearing includes allegations which, fairly read, clearly imply that the Department's decision is without any rational justification and was intended by the Department to preclude competition in the sale of weight scales, to the detriment of the public generally, as well as of appellant. The logical conclusion to be drawn from such allegations is that the Department has "acted *61 fraudulently, arbitrarily, illegally, or dishonestly." Id. Considering the general intent evident from a reading of chapter 337, and in particular the intent expressed in section 337.164, we believe that such allegations are sufficient to bring appellant within the zone of injury which the legislature meant to prevent by enactment of chapter 337. Accordingly, we conclude that appellant is entitled to a section 120.57 formal hearing. However, as in Groves-Watkins, "the scope of the inquiry [shall be] limited to whether the purpose[s] of competitive bidding ha[ve] been subverted. In short, the hearing officer's sole responsibility [will be] to ascertain whether the [Department] acted fraudulently, arbitrarily, illegally, or dishonestly." Id.
The Department argues that the operative facts of this case are indistinguishable from those of Fort Howard Co. v. Department of Management Services, 624 So.2d 783 (Fla. 1st DCA 1993), and that our decision in Fort Howard requires an affirmance in this case. For the following reasons, we disagree.
In the first place, the issue raised in Fort Howard was whether a non-bidder had standing to file a bid protest pursuant to section 120.53(5), Florida Statutes (1991). As we noted, citing Westinghouse Electric Corp. v. Jacksonville Transportation Authority, 491 So.2d 1238 (Fla. 1st DCA 1986), "absent extraordinary circumstances, a non-bidder does not have standing to file a bid protest." Fort Howard, 624 So.2d at 785. We affirmed the agency's holding that standing did not exist pursuant to section 120.53(5) because the facts of the case did not present "extraordinary circumstances." In contrast, this case does not involve a bid protest pursuant to section 120.53(5). Rather, it involves denial of a request for a formal hearing pursuant to section 120.57. As previously discussed, for purposes of section 120.57, standing is determined by application of the 2-pronged Agrico test.
Moreover, it is clear from the Fort Howard opinion that the result in that case would have been the same even if the appellant had requested a formal hearing pursuant to section 120.57. Given the fact that there was nothing to suggest that either of the unsuccessful bidders who had proposed to use the appellant's product had any interest in rebidding the contract, again proposing to use the appellant's product, the likelihood of injury-in-fact as a result of the proposed agency action was speculative at best. Therefore, the appellant would have been unable to satisfy the first prong of the Agrico test. It is likely that most non-bidder suppliers will face a similar obstacle. In this case, however, according to appellant's petition, the successful bidder proposed to use appellant's product, and would have done so but for the Department's position. Moreover, appellant has alleged that it will be substantially affected in the future because of the Department's intent "to construct many more weigh stations" using identical specifications.
In summary, we conclude that, based upon the allegations contained in appellant's petition, it was entitled to the section 120.57 formal hearing requested. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED, with directions.
BOOTH and SMITH, JJ., concur.