908 So.2d 1100 (2005)
MENORAH MANOR, INC., Appellant,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION, Appellee.
No. 1D03-3919.
District Court of Appeal of Florida, First District.
July 20, 2005.
*1101 James M. Barclay of Ruden McClosky, P.A. and Jay Adams of Broad and Cassel, Tallahassee, for Appellant.
Gregory J. Philo, Chief Appellate Counsel, Agency for Health Care Administration, Tallahassee, for Appellee.
VAN NORTWICK, J.
Menorah Manor, Inc., which owns and operates a nursing home, appeals a final order entered by the Agency for Health Care Administration (AHCA) determining that the nursing home was not entitled to *1102 an administrative hearing to challenge certain food preparation deficiencies. The deficiencies were cited on a report issued by AHCA following its survey conducted at the facility and the report was thereafter widely disseminated in accordance with Florida law. Because Menorah Manor alleges facts in its petition that would establish only that its reputation has been injured, which by itself is insufficient to establish entitlement to a section 120.57(1), Florida Statutes (2003) hearing, we affirm the dismissal of the petition. We believe, however, that Menorah Manor is entitled to at least one more opportunity to amend its petition to attempt to correct its pleading insufficiencies. Thus, we reverse and remand for further proceedings. Brookwood Extended Care Ctr. of Homestead, LLP v. Agency for Healthcare Admin., 870 So.2d 834, 841 (Fla. 3d DCA 2003).
AHCA conducted a survey at Menorah Manor to determine whether the nursing home was in compliance with federal requirements for nursing homes participating in the Medicare and Medicaid programs. Thereafter, AHCA issued its survey results in a report on Federal Form 2567 finding that Menorah was not in compliance with certain food preparation requirements and listing this as a deficiency under Tag F371. In its petition, Menorah Manor states that it was found not to have complied with 42 C.F.R. § 483.35(h)(2) and rule 59A-4.1288, Florida Administrative Code, requiring compliance with 42 C.F.R. § 483. Our examination of 42 C.F.R. § 483.35(h)(2) does not support the action which was taken here, however, and we believe that the correct citation should be to 42 C.F.R. § 483.35(d)(2), which requires the facility to provide "[f]ood that is palatable, attractive, and at the proper temperature." Menorah requested an informal dispute resolution (IDR) hearing seeking to have the Tag F371 deficiency removed from the survey report. After the IDR hearing, AHCA denied the request.
The issuance of Federal Form 2567 caused a number of statutorily mandated events to occur. Menorah Manor was required to post this report "in a prominent place that is in clear and unobstructed public view at or near the place where residents are being admitted to the facility." § 400.23(7)(d), Fla. Stat. (2003). AHCA was required to send copies of the report to the Center for Medicare and Medicaid Services (CMMS), to the local Long-Term Care Ombudsmen Council, and to the Public Library in St. Petersburg. See § 400.191(1). The CMMS publishes this information on its "Nursing Home Compare" internet website. AHCA publishes this data on its own website and in hard copy as required by section 400.191(2). The results of the survey continue to be reported by AHCA on its website for a period of forty-five months. § 400.191(2)(a)13 and 14. Finally, the results are used to rank Menorah Manor in comparison with other nursing homes in AHCA District 5 for a period of at least thirty months under the methodology used to prepare the Nursing Home Guide set forth in rule 59A-4.165, Florida Administrative Code.
In its petition, Menorah Manor alleges that its substantial interest have been adversely affected by AHCA's incorrect and erroneous determination that it failed to comply with the requirements of federal and state regulations because, in pertinent part:
Residents of Menorah Manor, members of the public, persons looking for nursing home care and the Jewish community, in particular, have been provided with an erroneous and inaccurate evaluation *1103 of Menorah Manor's ability to provide the highest quality of care by AHCA's incorrect determination. This results in a diminution of the respect accorded Menorah Manor by residents, the public, prospective residents, the Jewish community, the elderly, and the medical community. This in turn leads to increased resident dissatisfaction, reduced resident admissions and greater difficulty in hiring and retaining employees at Menorah Manor.
(Emphasis supplied). Menorah Manor alleged that the food in question had been requested by its residents, that there was concern among its residents that they may be inadvertently violating the teachings of their religion, and that its residents rely upon the meals served by the nursing home to be compliant with strict kosher kitchen religious practices. Menorah Manor alleged that there were disputed issues of material fact concerning whether it failed to store and serve food in a sanitary manner, and complained that the inaccurate and incorrect information in the Form 2567 had been used in AHCA's "Five Star Rating System" and in CMMS' "Nursing Home Compare" internet site. While the petition cites "current FDA Food Code Section 3-501.9, a Regulatory Hotline from the Florida Association of Homes for the Aging entitled `Guidance for Taking Food Temperatures,' and AHCA's own `Surveyor Guidance for Taking Food Temperatures in Nursing Homes,'" Menorah Manor fails to allege why these sources entitle it to prepare food in a manner contrary to the findings of AHCA. Finally, the petition cites numerous statutes and rules, but fails to allege how a correct interpretation of the statutes, rules, and AHCA's policies and practices required a different result than that reached by AHCA. Compare Ybor III, Ltd. v. Florida Housing Fin. Corp., 843 So.2d 344, 345 (Fla. 1st DCA 2003) ("Appellant argued that had Windsong's II application been scored in compliance with Appellee's clear rule instructions, policies, and practices, Appellant and not Windsong II, would be entitled to funding").
AHCA denied the request for an administrative hearing, finding that Form 2567 did not affect Menorah's substantial interest as it was investigatory and non-final in nature and neither proposed any penalties against Menorah nor amounted to a charging document.
At the outset, we reject the position taken by AHCA on appeal that a Form 2567, even though it may contain erroneous findings and can result in demonstrated harm to the recipient, can never be the subject of a 120.57 proceeding. We also reject AHCA's argument that, to successfully challenge the Form 2567, Menorah Manor was required to elect noncompliance, in which event AHCA would then act against the nursing home's license or file an administrative complaint giving Menorah Manor a point of entry under chapter 120. The preparation and dissemination of Form 2567 and the survey results did not amount to a mere recommendation for intended agency action. Instead, the issuance of the form was final as to the issue of the alleged food preparation deficiencies contained therein. Menorah Manor was required to comply with AHCA's findings. Although AHCA suggests Menorah Manor could have simply failed to comply (and caused an administrative complaint to be filed against it), we disagree that Menorah Manor was required to risk any potential danger to its residents before it could request an administrative hearing.
Instead, we believe a resolution of this issue depends upon the two-prong test which has been developed for determining whether a party's substantial interests have been affected by administrative *1104 action. Pursuant to this two-prong test, a party seeking a 120.57 hearing must show:
(1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and (2) that his substantial injury is of a type or nature which the proceeding is designed to protect.
Ybor III, Ltd. v. Florida Housing Fin. Corp., 843 So.2d at 346, quoting Agrico Chem. Co. v. Dep't of Envtl. Reg'l, 406 So.2d 478, 482 (Fla. 2d DCA 1981). Menorah Manor is required to satisfy both these prongs. The first involves the degree of the injury and the second concerns the nature of the injury at stake. Ybor III, Ltd., 843 So.2d at 346. With respect to the second prong, this factor usually requires that "the injury is of the type that the statute pursuant to which the agency has acted is designed to protect." Fairbanks, Inc. v. State, Dep't of Transp., 635 So.2d 58, 59 (Fla. 1st DCA 1994).
Menorah Manor argues, with some support, that the required substantial interest does not necessarily have to be expressly created by statute or rule, but may be implied by the substantive statute involved. See Kenneth D. Goldberg, Gaining Access to Formal Administrative Proceedings to Challenge Final Agency Action, 67 Fla. B.J. 67 (May 1993). Moreover, although AHCA suggests that Menorah Manor must establish a legal right to prepare food in the manner asserted, as this court recognized in Hasper v. Dep't of Labor and Employment Sec., 459 So.2d 400, 402 (Fla. 1st DCA 1984), section 120.57(1) was intended "to create a broad avenue of redress" for affected persons and "`substantial interests' contemplates rights not more restrictive but more expansive that those afforded by the predecessor statute [section 120.22, Florida Statutes (1973)] which provided redress for `legal rights, duties, privileges or immunities.'"
Turning to the allegations in Menorah Manor's petition, Menorah Manor contends that its reputation has been damaged by the dissemination of Form 2567 and the survey results. However, Florida case law is clear that damage to reputation is not alone sufficient to satisfy the "injury in fact" prong. Herold v. University of South Florida, 806 So.2d 638, 641 (Fla. 2d DCA 2002); Sickon v. School Bd. of Alachua County, 719 So.2d 360, 366 (Fla. 1st DCA 1998); compare Myers v. Dep't of Ins., 561 So.2d 1289 (Fla. 1st DCA 1990)(placement of an erroneous memorandum that has a stigmatizing effect in a personal record, which was not prepared in accordance with rule 22A-11.003, Florida Administrative Code, sufficient to create standing). Herold adopts the federal standard which requires that there must be a stigma "plus" to establish injury in fact and that the "plus" must constitute a violation of some tangible interest or alteration of legal status for an affected person to be entitled to a section 120.57 hearing. Herold, 806 So.2d at 641.
Here, Menorah Manor sought to allege an injury in fact, but its allegations fall short. See, e.g., Florida Police Benevolent Ass'n, Inc. v. Florida Dep't of State, 450 So.2d 283, 284 (Fla. 1st DCA 1984)("economic injury, in combination with other factors, may provide a basis for standing in an administrative proceeding"). Menorah Manor's allegations in its petition are conclusory and concern claims of speculative future harm. Further, Menorah Manor fails to identify statutes, rules and/or policies pursuant to which it was entitled to act in preparing and serving its food.
Although the allegations in Menorah Manor's petition are not sufficient to entitle the nursing home to a hearing under section 120.57(1), it does not appear to us *1105 that Menorah will be unable to cure these pleading defects. Accordingly, Menorah Manor should be given an opportunity to cure the defects in the allegations of its petition. Brookwood Extended Care Ctr. of Homestead, LLP, 870 So.2d at 841.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
BARFIELD, J., concurs and ERVIN, J., concurs and dissents with written opinion.
ERVIN, J., concurring and dissenting.
I concur with the majority's decision that the allegations in appellant's petition are not sufficient to entitle it to disputed-fact administrative hearing. I cannot agree that the petition, alleging essentially that appellant's substantial interests were affected by reason of the agency's issuance of Federal Form 2567, and its subsequent publications, is capable of amendment for the purpose of alleging the requisite injury. The only essential allegation of injury was that the published report of it serving Reuben sandwiches at 120 degrees, rather than the necessary 140, and serving tuna salad and egg salad that had not been chilled for a period of four hours affected its reputation. As the majority correctly states, such allegations are insufficient to satisfy injury in fact. Because there do not appear to be any other latent issues that can be reasonably gleaned from the petition, I would affirm.