IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

S.J.,

     Appellant,

v.

MALCOLM THOMAS and
SCHOOL BOARD FOR
ESCAMBIA COUNTY,
FLORIDA,

     Appellees.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-3635

_____/

Opinion filed December 19, 2017.

An appeal from the Circuit Court for Escambia County.
John L. Miller, Judge.

Benjamin James Stevenson, ACLU Foundation of Florida, Pensacola, and Nancy
Abudu, ACLU Foundation of Florida, Miami, for Appellant.

Joseph L. Hammons, The Hammons Law Firm, Pensacola, for Appellees.

WOLF, J.

Appellant S.J. challenges a trial court order dismissing with prejudice his

complaint requesting mandamus relief.  Appellant, a high school student, requested

the trial court to require appellee the Escambia County School Board (the School

Board) to issue a final order as defined by the Administrative Procedure Act (the APA), in section 120.57(7), Florida Statutes (2015), in an administrative proceeding regarding appellant's "disciplinary reassignment" by the School Board. We find that the complaint for mandamus relief sufficiently alleged facts that entitle appellant to mandamus relief.[1] We, therefore, reverse and remand for the trial court to issue an alternative writ of mandamus directing the School Board to show cause why the alternative writ should not be granted. See Holcomb v. Dep't of Corr., 609 So. 2d 751, 753 (Fla. 1st DCA 1992); Radford v. Brock, 914 So. 2d 1066, 1067-68 (Fla. 2d DCA 2005).

## I. Facts

Appellant, a minor, sued the School Board and the Superintendent of Schools, Malcolm Thomas. In his complaint, appellant alleged that the superintendent removed him from his regular, traditional school, West Florida High School, through a process called "disciplinary reassignment," and did not give him an option to attend another traditional school. Instead, appellant alleged he had to finish out the school year at either an alternative school or a virtual school. Appellant opposed the "disciplinary reassignment" and requested a hearing, which was held pursuant to the

---

[1] We decline to address appellee's assertion raised for the first time on appeal that a final order was actually issued. This claim was not raised in the motion to dismiss or ruled on by the trial court. Further, the face of appellant's complaint contradicted this assertion.

APA, sections 120.569 and 120.57, Florida Statutes. On January 28, 2016, the hearing officer issued a recommended order recommending appellant be "disciplinarily reassigned" for the remainder of the 2015-2016 school year.

On February 16, 2016, the School Board adopted the hearing officer's recommended order, and in March 2016 it created a Notice of Adoption of Recommended Order. There is no indication that the School Board intended its Notice of Adoption of Recommended Order to be a rendered final order pursuant to section 120.57(7). Further, the School Board's actions throughout this proceeding indicate that although it held a hearing on the issue of appellant's "disciplinary reassignment" pursuant to the APA, it did not intend to bestow upon appellant all of the rights afforded by the APA.

After the Notice of Adoption of Recommended Order was filed, appellant filed a complaint alleging two counts, only one of which is pertinent to the current appeal: appellant requested a writ of mandamus against the School Board, alleging the Board had an indisputable legal duty to issue a written final order pursuant to the APA following the hearing and the hearing officer's recommended order of "disciplinary reassignment." Appellant reasoned that his "disciplinary reassignment" affected his substantial interests much like expulsion. Specifically as to the nature of the "disciplinary reassignment," appellant's complaint alleged:

> 10. Following an incident on October 1, 2015, the Student's regular school principal suspended the Student.

3

11. Based on the October 1 incident, the Student's school principal requested that the Superintendent remove the Student from his regular school.

12. On October 21, 2016 [sic], the Superintendent recommended to the School Board to remove the Student from his regular school through a process called "disciplinary reassignment."

13. Both disciplinarily reassigned students and students expelled with services are removed from their regular schools. Expelled students are offered the same educational services at an alternative or virtual school as offered to disciplinarily reassigned students.

14. Like the determination to expel a student, the determination to disciplinarily reassign a student affects his substantial interest.

15. Disciplinary reassign [sic] affects a student's substantial interest in a high quality education and educational opportunities in several ways including the quantity and quality of work assignments, the curriculum design, availability of physical education, the teaching methods and learning activities used, access to highly qualified teachers, positive social interactions with traditional school students during both instructional and non-instructional periods, eligibility to participate in sports and extracurricular activities, blemish on school record, and the location of the school.

16. After the Superintendent issued his recommendation of disciplinary reassignment, the Superintendent prohibited the Student from attending his regular school. The Superintendent has prohibited the Student from attending his regular school since the Superintendent made the recommendation of disciplinary reassignment. The Superintendent continues to prohibit the Student from attending his regular school or any other traditional school in the School District.

. . . .

(Emphasis added).

The School Board moved to dismiss appellant's complaint requesting mandamus relief, alleging it had no legal duty to issue a final written order pursuant to the APA because (1) the Legislature did not explicitly require the same APA due process protections for "disciplinary reassignment" as it did for expulsion, and (2) appellant's "disciplinary reassignment" did not trigger APA protection because it did not affect his substantial interests.

A hearing was held on the motion to dismiss on May 26, 2016, where both parties presented argument. The trial court orally granted the motion to dismiss, holding that the APA did not apply to "disciplinary reassignment" both because (1) the Legislature did not explicitly provide for "disciplinary reassignment" to fall under the purview of the APA like it provided for expulsion; and (2) "disciplinary reassignment" did not affect a substantial interest of appellant. The court also determined that the School Board allowing an administrative hearing in this case and having the hearing officer make findings of fact and conclusions of law did not automatically vest jurisdiction within the APA.

## II. Analysis

A request for mandamus relief is appropriate when an agency wrongfully refuses to issue an administrative final order pursuant to the APA. Sowell v. State, 136 So. 3d 1285 (Fla. 1st DCA 2014). Our review of a trial court's order dismissing a complaint based upon an interpretation of statutes is de novo. See Walker v. Ellis,

989 So. 2d 1250 (Fla. 1st DCA 2008); <u>Henry v. State</u>, 134 So. 3d 938, 945 (Fla. 2014).

This court has laid out the appropriate procedure for a trial court when ruling on a motion to dismiss a request for mandamus relief. Similar to ruling on any motion to dismiss, the trial court must consider the sufficiency of the allegations as pled.

> In order for a court to issue a writ of mandamus, a petitioner "must show that he has a clear legal right to the performance of a clear legal duty by a public officer and that he has no other legal remedies available to him." <u>Hatten v. State</u>, 561 So.2d 562, 563 (Fla.1990). When a petitioner files a petition for mandamus, the court has the initial task of assessing the legal sufficiency of the allegations. If the court finds the allegations insufficient, it will deny the petition, <u>see, e.g.</u>, <u>Gibson v. Florida Parole & Probation Comm'n</u>, 450 So.2d 553 (Fla. 1st DCA 1984), or dismiss those claims that are factually insufficient, <u>see, e.g.</u>, <u>Adams v. Wainwright</u>, 512 So.2d 1077 (Fla. 1st DCA1987). However, if the petition is facially sufficient, the court must issue an alternative writ, i.e., an order directed to the respondent to show cause why the requested relief should not be granted. <u>Conner v. Mid-Florida Growers, Inc.</u>, 541 So.2d 1252, 1256 (Fla. 2d DCA1989); Fla.R.Civ.Pro. 1.630(d).

<u>Holcomb</u>, 609 So. 2d at 753.

"Disciplinary reassignment" is neither defined nor mentioned in the Florida Statutes. Thus, the method of review of this type of disciplinary action of the School Board is not clearly outlined. However, other types of disciplinary decisions are specifically addressed in the statutes, which set out the methods of review of those decisions. Appellant claims he is entitled to a final order under the APA and that

6

such a final order is necessary for this court to review this case on the merits. Mitchell v. Leon County Sch. Bd., 591 So. 2d 1032, 1033 (Fla. 1st DCA 1991) ("In the absence of rendition of a proper order there is nothing for this court to review nor, for that matter, any true legal obstacle to Mitchell's return to classes."). We, therefore, must resolve two issues: (A) whether "disciplinary reassignment," as set out in the complaint, is sufficiently similar to other types of discipline that fall under the purview of the APA to also require APA protections in this case, including the rendering of a final order; and (B) even if "disciplinary reassignment" is not sufficiently similar to other types of discipline, whether its application nonetheless affects appellant's substantial interests and therefore requires application of the APA.

### A. Whether "Disciplinary Reassignment" is Similar to Other Types of Education Code Discipline

The Florida Legislature permits school districts to deprive a student of his or her constitutional right to an education in a traditional school and remove the student from the classroom in four specific ways. School districts may remove a student through (1) in-school suspension; (2) out-of-school suspension; (3) expulsion; and (4) either voluntary or involuntary assignment to a "dropout prevention [or] academic intervention program." See § 1006.07(1)(a), Fla. Stat. (2015) (directing school boards to adopt rules for the "in-school suspension, [out of school] suspension, and expulsion of students"); § 1003.53, Fla. Stat. (2015) ("defining

7

dropout prevention [or] academic intervention program"); § 1003.32(5), Fla. Stat. (2015) (indicating a student removed from a classroom may be placed in in-school suspension, out-of-school suspension, assigned to a "dropout prevention [or] academic intervention program," or expelled).

Each form of removal is clearly defined in the Education Code. § 1003.01, Fla. Stat.; § 1003.53, Fla. Stat. Further, the Florida Legislature has explicitly indicated whether each form of removal is subject to the APA. Both in-school and out-of-school suspensions are excluded from the APA. § 1006.07(1)(a), Fla. Stat. Expulsion and involuntary assignment to a "dropout prevention [or] academic intervention program" are subject to the APA. § 1006.07(1)(a), Fla. Stat; § 1003.53(5), Fla. Stat.

Rather than reviewing the entirety of the Education Code as a whole, however, the trial court looked only to one section of the Code, section 1006.08(1), Florida Statutes (2015), to support its finding that the APA did not apply to "disciplinary reassignment" because that section did not explicitly provide for it.

Section 1006.08(1) notes the authority of various school employees to place disruptive students "in an alternative education setting;" however, it does not delineate the types of "alternative education settings" in which students may be placed. It does specifically note, though, that a student who is recommended for expulsion by the district school superintendent will have the due process rights of

8

the APA. Relying solely on this section, the trial court determined, and the School Board argues, that the Legislature's silence indicates its clear intent to exclude students facing placement in an "alternative educational setting" other than expulsion from the procedural protections of the APA.

The trial court's reading of section 1006.08 does not give the Legislature's intent full consideration because it does not consider the Education Code in its entirety. The Legislature's determination in section 1006.08 that students who are expelled should be protected by the procedural due process rights of the APA cannot necessarily be read to exclude students facing placement in an "alternative education setting" from receiving the same due process protections. "'[I]f a *part* of a statute appears to have a clear meaning if considered alone but when given that meaning is inconsistent with other parts of the *same statute* or others in pari materia, the Court will examine the entire act and those in *pari materia* in order to ascertain the overall legislative intent.'" Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1265-66 (Fla. 2008) (quoting Fla. State Racing Comm'n v. McLaughlin, 102 So. 2d 574, 575-76 (Fla. 1958)).

The Education Code, in sections other than section 1006.08, provides APA protections to students who are placed in other "alternative education settings" but are not expelled. For example, involuntary placement in a dropout prevention and academic intervention program could be considered "placement in an alternative

9

education setting;" though section 1006.08 itself did not expressly provide for APA protection for those involuntarily placed in a dropout prevention and academic intervention program, section 1003.53, Florida Statutes, explicitly does. Thus, it is illogical, from reading the Education Code in pari materia, to determine that the Legislature's failure to note in one section of the Education Code that "alternative education settings" other than expulsion could be governed by the APA evinced a legislative intent to exclude <u>all</u> of the other "alternative education settings" from the APA's jurisdiction.

Further, in the Education Code, the Legislature not only specifically noted certain "alternative education settings" that were governed by the APA, it also specifically noted certain "alternative education settings" that were exempt from the APA. For example, section 1006.07(1)(a) notes that "[s]uspension hearings are exempted from the provisions of chapter 120," but that "[e]xpulsion hearings shall be governed by ss. 120.569 and 120.57(2)." The Legislature did not explicitly exclude "disciplinary reassignment" from the purview of the APA as it did with other forms of discipline.

Because the Legislature failed to explicitly determine whether "disciplinary reassignment" itself falls within the purview of the APA, we reject an interpretation of the Education Code that requires this court to look solely at the statutes without consideration of the consequences of "disciplinary reassignment" as alleged in the

10

complaint to determine whether those consequences entitle a "disciplinarily reassigned" student to the due process protections of the APA.

Where the Legislature has determined that expulsions and involuntary assignments to dropout prevention and academic intervention programs do require the procedural protections of the APA, it is logical to further conclude that "disciplinary reassignments" that are factually indistinguishable on the face of the complaint from expulsion and involuntary assignment to dropout prevention and academic intervention programs should also fall within the purview of the APA. Here, we believe appellant's "disciplinary reassignment" as alleged in his complaint is similar to both expulsion and involuntary assignment to dropout prevention and academic intervention programs as defined by the Education Code.[2]

"Expulsion" is defined in the Education Code as "the removal of the right and obligation of a student to attend a public school under conditions set by the district

---

[2] The Fifth District Court of Appeal recently held that a student who was transferred from her then-current school to a virtual school for a period of time was not entitled to the protections of the APA. G.F.C. v. Pace, 225 So. 3d 421 (Fla. 5th DCA 2017). We do not find this case persuasive. The court relied on a case from the Fourth District, D.K. ex rel. Kennedy v. District School Board of Indian River County, 981 So. 2d 667 (Fla. 4th DCA 2008), which held that a student who was suspended for 10 days is not entitled to the protections of the APA. To the extent that the Fifth District equates the punishment imposed in G.F.C. with a period of short suspension, we reject that contention. For the reasons previously expressed, we determine that the punishment imposed in this case is more similar to an expulsion than a brief suspension.

11

school board, and for a period of time not to exceed the remainder of the term or school year and 1 additional year of attendance. Expulsions may be imposed <u>with or without</u> continuing educational services and shall be reported accordingly." § 1003.01(6), Fla. Stat. (2015) (emphasis added).

Appellant contends that "disciplinary reassignment" is the same as expulsion with continuing educational services because his reassignment prevented him from attending another traditional school. However, the School Board points out that expulsion eviscerates the student's right to attend a public school, whereas "disciplinary reassignment" allows the student to attend a public school – just a different one than his or her original public school. It notes that here, appellant was able to enroll in a virtual school. The distinction is a fine one and may even be a distinction without a difference, as expulsion can include "continuing educational services." Further, in the current case, appellant alleged in his complaint that he was not given the option of attending another traditional public school. If these allegations are taken as true, there is no meaningful distinction between expulsion and the "disciplinary reassignment" in this case.

Additionally, as noted by appellant, "disciplinary reassignment" has much in common with involuntary assignment to dropout prevention and academic intervention programs as outlined in section 1003.53, Florida Statutes. That statute notes that while normally student participation in a dropout prevention or academic

intervention program is voluntary, "[d]istrict school boards may . . . assign students to a program for disruptive students." § 1003.53(1)(a), Fla. Stat. A student qualifies for services funded through the dropout prevention and academic intervention program if he or she "has a history of disruptive behavior in school." § 1003.53(1)(c)3, Fla. Stat. "Disruptive behavior" in that subsection is defined as behavior that either "[i]nterferes with the student's own learning or the educational process of others and requires attention and assistance beyond that which the traditional program can provide or results in frequent conflicts of a disruptive nature," or that "[s]everely threatens the general welfare of students or others with whom the student comes into contact." § 1003.53(1)(c)3b, Fla. Stat.

Dropout prevention and academic intervention programs may differ from traditional educational programs and schools in:

> scheduling, administrative structure, philosophy, curriculum, or setting and shall employ alternative teaching methodologies, curricula, learning activities, and diagnostic and assessment procedures in order to meet the needs, interests, abilities, and talents of eligible students.

§ 1003.53(1)(a), Fla. Stat.

These differences between dropout prevention and academic intervention programs and traditional educational programs mirror the ways in which appellant alleged his "disciplinary reassignment" from his traditional school to a virtual school affected his substantial interests:

13

the quantity and quality of work assignments, the curriculum design, availability of physical education, the teaching methods and learning activities used, access to highly qualified teachers, positive social interactions with traditional school students during both instructional and non-instructional periods, eligibility to participate in sports and extracurricular activities, blemish on school record, and the location of the school.

Thus, expulsion, involuntary assignment to a dropout prevention and academic intervention program, and the "disciplinary reassignment" as alleged in the current case all have shared characteristics that may involve involuntary separation from the traditional educational setting and benefits attached to such placement for potentially long periods of time. Because of this similarity, and because appellant's complaint must be taken as true with the procedural posture of this case, we find the trial court erred in granting the motion to dismiss appellant's complaint. Where appellant sufficiently alleged a similarity between "disciplinary reassignment" and two other disciplinary measures that explicitly fall under the purview of the APA pursuant to the Education Code, it was error for the trial court to determine, solely on the face of appellant's complaint, that appellant's own "disciplinary reassignment" did not also fall within the APA's purview.

B. Whether Appellant's "Disciplinary Reassignment" in the Current Case Affects His Substantial Interests

Appellant also alleges that the consequences of his "disciplinary reassignment" as set forth in his complaint affected his substantial interests, and

14

therefore his "disciplinary reassignment" required the application of the APA. We agree. To determine whether an action affects the substantial interests of the plaintiff pursuant to section 120.569, Florida Statutes, two questions must be asked: (1) whether the proposed agency action results in an injury-in-fact that is of sufficient immediacy to justify a hearing; and (2) whether the injury is of the type that the statute under which the agency has acted is designed to protect. School Bd. of Palm Beach County v. Survivors Charter Sch., Inc., 3 So. 2d 1220, 1231 (Fla. 2009) (quoting Fairbanks, Inc. v. State, Dep't of Transp., 635 So. 2d 58, 59 (Fla. 1st DCA 1994)).

### 1. *Injury-in-Fact*

Under the first prong, "the injury-in-fact standard is met by a showing that the petitioner has sustained actual or immediate threatened injury at the time the petition was filed, and '[t]he injury or threat of injury must be both real and immediate, not conjectural or hypothetical.'" S. Broward Hosp. Dist. v. State, Agency for Health Care Admin., 141 So. 3d 678, 681 (Fla. 1st DCA 2014) (quoting Village Park Mobile Home Ass'n v. State, Dep't of Bus. Regulation, 506 So. 2d 426, 433 (Fla. 1st DCA 1987) (holding that appellant established injury-in-fact by showing the real and immediate injury that it would not receive a refund of almost $150,000 as a result of AHCA's action)); Menorah Manor, Inc. v. Agency for Health Care Admin., 908 So. 2d 1100, 1104 (Fla. 1st DCA 2005) (finding Menorah Manor failed to prove

15

substantial injury where the harm it alleged was conclusory, speculative, and regarded damage only to its reputation).

In his complaint, appellant alleged that the School Board affected his substantial interests by removing him from his regular school and "disciplinarily reassigning" him to an alternative or virtual school:

> Disciplinary reassign[ment] affects a student's substantial interest in a high quality education and educational opportunities in several ways including the quantity and quality of work assignments, the curriculum design, availability of physical education, the teaching methods and learning activities used, access to highly qualified teachers, positive social interactions with traditional school students during both instructional and non-instructional periods, eligibility to participate in sports and extracurricular activities, blemish on school record, and the location of the school.

The School Board states that this allegation is insufficient and relies on School Board of Orange County v. Blackford, 369 So. 2d 689, 691 (Fla. 1st DCA 1979), in which two parents of children who attended Cherokee Junior High School alleged that they (via their children) had a substantial interest in their children's school being shut down and their children being transferred to Howard Junior High School. This court determined that although "[e]very concerned parent has an interest in their children and in the educational program in which their children are enrolled," and "[t]hey also have a natural interest that the educational progress of the child not be unnecessarily disrupted," a change from one school to the other, on its face, standing alone, could not be considered a hindrance. Id.

16

Blackford, however, does not apply because it involved a transfer from one traditional high school to another. In contrast, in this case appellant alleged that his "disciplinary reassignment" affected his ability to attend a traditional high school at all. He alleged that "[t]he Superintendent continues to prohibit the Student from attending his regular school or any traditional school in the school district." (Emphasis added). Thus, appellant properly alleged injury in fact and met the first requisite element to prove his "disciplinary reassignment" affected his substantial interests.

## 2. *Injury of the Type Protected by the Statute*

To meet the second element necessary to prove his "disciplinary reassignment" affected his substantial interests, appellant needed to show his injury was of the type that the statute under which the School Board acted was designed to protect. Fairbanks, 635 So. 2d at 59. We find appellant has done so.

The statutes at issue in the present case were intended to establish a balance between the right of the school administration to control the behavior of students at school for the benefit and welfare of all students versus the rights of a student to due process in challenging severe disciplinary measures.

The purpose of the Education Code as a whole "is to provide by law for a state system of schools, courses, classes, and educational institutions and services adequate to allow, for all Florida's students, the opportunity to obtain a high quality

17

education." § 1000.01(2), Fla. Stat. (2015). Thus, appellant's allegation that his "disciplinary reassignment" affects his substantial interests in attending a traditional public school are the type of interests the Education Code was designed to protect.

However, the Education Code also requires the school districts "[p]rovide for the proper accounting for all students of school age, for the attendance <u>and control of students at school</u>, and for <u>proper attention to health, safety, and other matters relating to the welfare of students</u>." § 1003.02(1), Fla. Stat. (2015) (emphasis added). "Control of students" encompasses adopting "rules for the control, attendance, discipline, in-school suspension, suspension, and expulsion of students." § 1003.02(1)(c)1, Fla. Stat. We do not challenge the ability and necessity of the School Board to control and ensure a safe environment for all of its students.

Nonetheless, the Education Code does provide for a balance between the two occasionally competing interests of the student's right to receive a high-quality public education and the duty of school boards to control students. This balance can be found in the Legislature's determination that certain disciplinary actions are governed by the APA. Pro Tech Monitoring, Inc. v. State, Dep't of Corr., 72 So. 3d 277, 279 (Fla. 1st DCA 2011) ("[T]he purpose of the Administrative Procedure Act is to ensure due process and fair treatment of those affected by administrative actions.").

18

Thus, the procedural safeguards afforded by the APA allow students to challenge the School Board's disciplinary decisions that affect their substantial interests. Where, as here, appellant has appropriately alleged his substantial interests are affected, the APA enables appellant to challenge the School Board's disciplinary action. In conclusion, we determine that appellant's complaint pled a facially sufficient request for a writ of mandamus ordering the School Board to render a final order of appellant's "disciplinary reassignment." Appellant sufficiently alleged that the "disciplinary reassignment" in his case was virtually indistinguishable from expulsion with continued educational services, which falls under the purview of the APA pursuant to the Education Code. Appellant also sufficiently alleged that "disciplinary reassignment" affected his substantial interests.

As such, we determine that the trial court erred in granting the School Board's motion to dismiss appellant's complaint, and we REVERSE and REMAND for the trial court to issue an alternative writ of mandamus directing the School Board to show cause why the requested relief should not be granted. See Holcomb, 609 So. 2d at 753; Radford, 914 So. 2d at 1067-68.

B.L. THOMAS, C.J., and ROBERTS, J., CONCUR.

19